# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1894V
### UNPUBLISHED

|  |  |
|---|---|
| GEORGE BROCK,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: June 6, 2023<br><br>Special Processing Unit (SPU);<br>Attorney's Fees and Costs;<br>Reasonable Basis; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY,* for Petitioner.

*Felicia Langel, U.S. Department of Justice, Washington, DC,* for Respondent.

**DECISION ON ATTORNEY'S FEES AND COSTS**[1]

　　On December 17, 2020, George Brock filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a left shoulder injury related to vaccine administration ("SIRVA") caused-in-fact by the tetanus, diphtheria, acellular pertussis ("Tdap") vaccine he received on January 2, 2018. Petition at 1, ¶¶ 4, 18.

　　After determining that Petitioner had failed to provide sufficient evidence to support his claim – specifically the six-month severity requirement - I allowed him the opportunity to correct the noted deficiency or to otherwise show cause why his claim should not be

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

dismissed. ECF No. 30; *see* Section 11(c)(1)(D)(i) (severity requirement). On July 21, 2022, Petitioner filed a motion requesting that I dismiss his claim (ECF No. 31), and I granted the motion. ECF No. 32.

On August 11, 2022, Petitioner filed a request for an award of $24,430.73 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs, ECF No. 37. In accordance with General Order No. 9, Petitioner filed a signed statement indicating that he incurred no out-of-pocket expenses. ECF No. 37-3.

On August 24, 2022, Respondent filed a brief in opposition. Respondent's Response to Motion ("Opp."), ECF No. 39. Petitioner countered Respondent's arguments in his reply. Petitioner's Reply to Opp. ("Reply"), ECF No. 47. He also requested an additional $1,221.00 in attorney's fees for work performed after filing his motion for attorney's fees and costs, including drafting the filed reply. *Id.* at 4.

For the reasons discussed below, Petitioner has failed to establish there was a reasonable basis for his claim. Thus, he is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

## I.     Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984

F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion,

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.   The Parties' Arguments

Respondent maintains that the claim's inability to establish six months of post-vaccination severity was objectively evident from the outset. Opp. at 9. To that end, he emphasizes the minimal treatment Petitioner received (oral steroids prescribed during an appointment with his primary care provider ("PCP") on February 23, 2018, approximately seven weeks post-vaccination),[4] along with the fact that he appeared to display good arm movement without weakness when seen at the emergency room following a motor vehicle accident on April 17, 2018, approximately four and a half months post-vaccination. Respondent also emphasizes the PCP's opinion, provided on January 14, 2020 (more than two years post-vaccination – but months before the claim's filing), that Petitioner's current pain was due to arthritis, and thus *not* a continuation of his earlier SIRVA injury. Opp. at 9 (citing Exhibit 5 at 74; Exhibit 10 at 4; Exhibit 5 at 125, respectively). And citing billing records showing Petitioner paid $75 for his initial visit in February 2018, and no charge for his April 2018 emergency room visit, Respondent rebuffs Petitioner's claim that his lack of medical insurance caused him to avoid treatment. Opp. at 9. Thus, Respondent contends that the proof that this claim could not establish severity was to be found in the record long before the petition's filing.

Petitioner insists that he has provided the objective evidence needed to establish a reasonable basis for his claim. Reply at 4. Emphasizing his initial SIRVA diagnosis, need for a second round of oral steroids in March 2018, and lack of any other reason to deny his request for attorney's fees and costs (*id.* at 1-2), he argues that "the record undeniably supports a 'feasible' claim for recovery" (*id.* at 3). And in response to the 2020 treater statement that his later pain was not connected to his earlier SIRVA Injury, Petitioner stresses his report at this same January 2020 visit of persistent pain which had progressively worsened over the last two years. *Id.* at 2-3 (citing Exhibit 5 at 125).

## III.   Analysis

The medical records reveal that Petitioner suffered from left shoulder pain and limited range of motion after receiving the Tdap vaccine on January 2, 2018. However, there is substantial evidence supporting the conclusion that this injury had *resolved* by late March 2018, less than three months post-vaccination. Although Petitioner now maintains that he continued to suffer progressively worsening pain until he sought treatment again in January 2020 (more than two years post-vaccination), there is no

---

[4] Petitioner also received a prescription for a second round of oral steroids after a phone call with his PCP on March 17, 2018. Exhibit 5 at 87.

evidence in the contemporaneously created medical records which support an ongoing injury. And the scant evidence provided by the affidavits and statements from Petitioner and his family members is not sufficient to satisfy even the lower standard of objective proof applied to the reasonable basis inquiry.

Petitioner first sought treatment for his left shoulder symptoms following receipt of the Tdap vaccine on February 23, 2018, more than a month post-vaccination. Exhibit 5 at 74. Opining that Petitioner was suffering from a SIRVA injury, the treating physician provided him with a home exercise program and prescribed nine days of an oral steroid[5] (due to Petitioner's reluctance to undergo an injection). *Id.* at 74-75. The following month, Petitioner called the treating physician requesting a refill of the oral steroid prescription. Exhibit 5 at 86. He reported that he "felt really good" while taking this medication, but "[n]ow that he is off of this [medication] his shoulder pain *is coming back*." *Id.* (emphasis added). The physician prescribed another nine-day course of oral steroids. *Id.* at 86-87. These medical records thus show Petitioner obtained complete, but temporary, relief from the first round of oral steroids, and support the conclusion that almost three months post-vaccination, he was still experiencing SIRVA-related pain.

However, there is no evidence showing Petitioner sought further treatment for left shoulder pain, following a second round of oral steroids, until more than *two years* post-vaccination in January 2020. And the closest-in-time intervening record is not supportive of an ongoing injury. Thus, when seen at the emergency room ("ER") on April 17, 2018, following a motor vehicle accident,[6] Petitioner complained of *only* lower back and knee pain.[7] Exhibit 10 at 2-8. Indeed, during the physical examination, it was noted that Petitioner was "mov[ing] his neck and arms well without any weakness or numbness noted." *Id.* at 3. Thus, this record further supports the premise that Petitioner's left shoulder injury had resolved by this point (now three and one-half months post-vaccination).

Although Petitioner maintains that his left shoulder pain progressively worsened for almost two years after (Exhibit 3 at ¶¶ 10-14; Exhibit 12 at ¶ 9), his contentions are countered by the record in this case, including the history he provided when he again sought treatment in January 2020. At this visit, Petitioner complained of left shoulder pain

---

[5] The prescription consisted of 18 tablets taken over a nine-day period: three tablets per day for the first three days, two tablets a day for the next three days, and one tablet per day for the final three days. Exhibit 5 at 75.

[6] Petitioner was rear-ended while belted and stopped at an intersection. Exhibit 10 at 2.

[7] Although the initial chief complaint describes neck and *left* knee pain, as well as back pain, the entry regarding *left* knee pain appears incorrect as the remainder of this medical record refers only to *right* knee pain. Exhibit 10 at 2-8. Additionally, the neck collar initially provided for any neck pain was later removed during the ER visit. *Id.* at 2, 5.

which "*[o]ver the last month* . . . has gotten profoundly worse." Exhibit 5 at 123 (emphasis added). And his PCP attributed that later left shoulder pain to "[c]onsiderable degenerative changes" and "significant arthritis" seen on x-rays taken that day – not to the earlier SIRVA. *Id.* at 124.

Petitioner further argues that his lack of treatment was the result of its cost, given his lack of insurance. But the fact that Petitioner appears also to have been uninsured when he sought treatment in February and March 2018, coupled with the low cost of Petitioner's February 2018 PCP ($75), undercut such contentions. Additionally, the record in this case shows that Petitioner retained Petitioner's counsel - who would have understood the importance of procuring the needed evidence of continued sequela, in January 2018, a few *weeks* post-vaccination. Exhibit 9.

I otherwise do not give great weight to witness statements offered to substantiate severity. The witness statements from Petitioner's family members are literally signed, but lack any notarization or language which conforms to the requirements of 28 U.S.C.A. § 1746. *See* Exhibits 6-8. Additionally, all statements are almost identical, providing only vague representations of ongoing pain, and one specific recollection of shoulder pain during the Labor Day weekend in 2018. *Id.*

Overall, the filed medical record does not objectively establish that any SIRVA injury associated with Petitioner's January 2018 vaccination extended to or beyond the six-month period required for a Vaccine Act claim. And this evidence was in the record possessed by Petitioner at the case's outset as well. Thus, the case lacked reasonable basis on this element of the claim from the start, thus prohibiting an award of fees.

### IV. Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master